UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ROBERT D. HUNTER, et al.,**

    **Plaintiffs,**

v.                                  Case No. 8:09-cv-1772-T-TBM

**MARLOW YACHTS LIMITED, INC., et al.,**

    **Defendants.**

_____/

**O R D E R**

THIS MATTER is before the court on the following motions and responses:

1. **Defendants', Marlow Yachts Limited, Inc., Marlow Marine Sales, Inc., Marlow Marine Service, Inc. f/k/a Marlow Marine Services, Inc., Motion to Dismiss Plaintiffs, Robert D. Hunter and Pat Hunter f/u/b/o St. Paul Fire & Marine Ins. Co., Third Amended Complaint** (Doc. 95) and Plaintiffs' response in opposition (Doc. 102);

2. **Defendants', Marlow-Cannova Group, Inc., Michael F. Cannova, and David H. Marlow, Motion to Dismiss Plaintiffs', Robert D. Hunter and Pat Hunter, f/u/b/o St. Paul Fire & Marine Ins. Co., Third Amended Complaint** (Doc. 96) and Plaintiffs' response in opposition (Doc. 101); and

3. **Venwest Yachts, Inc.'s Motion to Dismiss Plaintiffs' Third Amended Complaint** (Doc. 97) and Plaintiffs' response in opposition (Doc. 100).[1]

By their motions, Defendants seek dismissal of Plaintiffs' Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). By this complaint, Plaintiffs sue Marlow Yachts Limited, Inc., Marlow Marine Sales, Inc., and Marlow Marine Service, Inc. f/k/a Marlow

---

[1] Additionally, the Marlow Defendants and Plaintiffs make reference to and incorporate their prior motions to dismiss and responses thereto. (Docs. 4, 11, 44, 62, 69).

Marine Services, Inc., Marlow-Cannova Group, Inc., Michael F. Cannova, and David H. Marlow (collectively "Marlow" or "the Marlow Defendants"); and Venwest Yachts, Inc. ("Venwest"). Because I conclude that the tort claims are barred by the economic loss rule, Counts I, II, III, and IV of the Third Amended Complaint are subject to dismissal with prejudice. In all other respects, Defendants' motions are denied.

I.

By their complaint, Oregon residents, Robert and Pat Hunter ("the Hunters" or "Plaintiffs"), traveled to the Ft. Lauderdale, Florida, boat show in late 2004 to view and possibly purchase a yacht. (Doc. 94). At the conclusion of the boat show, Plaintiffs deposited $150,000 with Venwest, a Washington corporation, as down payment on the purchase of a Marlow motor yacht. *Id.* In December 2004, the Hunters and Venwest entered into a written Yacht Purchase Contract (the "Agreement"). *See* (Doc. 94-1). The Agreement identifies Venwest as the "exclusive West Coast dealer for Marlow Explorer Yachts, Ltd.," which is identified as the "Builder." *Id.*[2] By the Agreement, Plaintiffs agreed to purchase from Venwest a 57C Marlow Explorer motor yacht for 1.7 million dollars. Venwest agreed to place an order for the construction of such vessel by the Builder and to ensure the Builder's

---

[2]Plaintiffs allege that the Defendants, Marlow Yachts Limited, Inc., Marlow Marine Sales, Inc., and Marlow Marine Service, Inc. f/k/a Marlow Marine Services, Inc., and Marlow-Cannova Group, Inc., are Florida corporations and are the designers, manufacturers, installer of equipment and/or warranty providers for the subject yacht. (Doc. 94, ¶¶5-8). Plaintiffs allege that they did business as Marlow Explorer Yachts, Ltd., although there is no such legal entity. This complaint adds David H. Marlow and Michael F. Cannova, owners of the Marlow-Cannova Group, Inc., as Defendants on allegations that through Marlow-Cannova Group, Inc., they operated the Marlow entities. *Id.*, ¶12. It is alleged that they knew Marlow Explorer Yachts, Ltd., was a sham and yet they issued contracts and/or warranties in that entity's name. *Id.*, ¶24.

due diligence and dispatch to have the vessel delivered.  The Agreement contained an express limitation and disclaimer of warranties.  (Doc. 94-1 at 3).  Apparently in connection with the Bill of Sale (94-2) issued by Venwest in February 2007 upon delivery of the vessel, Marlow Explorer Yachts, Ltd., issued a written Limited Warranty.  (Doc. 94-3).  Both the Agreement and limited warranty purport to disclaim implied warranties.  *See* (Docs. 94-1, 94-3).

On or about August 30, 2007, while the yacht was docked on navigable waters in Portland, Oregon, an improperly installed and/or wired light fixture malfunctioned and/or overheated which caused a fire.  The subject fire caused damage to the yacht in excess of $835,300.00.  Plaintiffs seek to hold Marlow and their principals and Venwest liable for the damage to the yacht.[3]  (Doc. 94).

The Third Amended Complaint alleges thirteen counts.[4]  In Counts I and II, Plaintiffs sue the Marlow Defendants and Venwest respectively for the negligent installation, wiring, and/or inspection of the defective light fixture.  *Id.* at 7-8.  In Counts III and IV, Plaintiffs sue the Marlow Defendants and Venwest respectively for strict liability.  *Id.* at 8-9.  In Counts V and VI, Plaintiffs sue Venwest and the Marlow Defendants respectively for breach of contract in the failure to provide a properly manufactured vessel with properly installed light fixtures.[5]

---

[3]St. Paul Fire & Marine Ins. Co. ("St. Paul") is subrogated to the rights of its insureds, the Hunters, to the extent of the payments it made to the Hunters for the damage to the yacht. (Doc. 94, ¶ 30).

[4]Plaintiffs filed a notice of withdrawing the counts for breach of implied warranty of fitness for a particular purpose against Venwest Yachts, Inc. (Count IX) and Marlow (Count X).  *See* (Doc. 99).

[5]In Count V, Plaintiffs allege Venwest's breach of the Yacht Purchase Contract and the Bill of Sale.  In Count VI, Plaintiffs allege they are third-party beneficiaries to the contract

*Id.* at 10-11. In Counts VII and VIII, Plaintiffs sue Venwest and the Marlow Defendants respectively for breach of the implied warranty of merchantability. *Id.* at 11-13. In Count XI, Plaintiffs sue the Marlow Defendants for breach of the express warranty purportedly issued by Marlow Explorer Yachts, Ltd. *Id.* at 17-18. Count XII asserts a claim for individual liability against Defendants Cannova and Marlow, as Principals of Marlow, for authorizing the use of the name Marlow Explorer Yachts, Ltd., a sham entity, intending thereby to avoid legitimate debts and warranty claims. *Id.* at 18-19. Lastly, Count XIII sues all Defendants under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. *Id.* at 19-20.

By their motions to dismiss, the Defendants challenge the sufficiency of the allegations and assert that the negligence and strict liability claims asserted in Counts I - IV are tort claims and therefore are barred by the economic loss rule where Plaintiffs have only alleged damage to the yacht itself.[6] Venwest also asserts that as a mere broker in the transaction, it cannot be held strictly liable. As for the breach of contract claims in Counts V and VI, Defendants urge that Plaintiffs have failed to plead sufficient facts to state a cause of

---

between Venwest and Marlow to build this vessel. The alleged breach is the failure of Defendants to build and provide a properly installed, manufactured and/or inspected vessel.

[6]The Marlow Defendants urge that the contract and tort claims are governed by Florida law. (Doc 44). They urge maritime law governs the claims brought for violation of the Magnuson-Moss Warranty Act and for breach of express warranty. (Doc. 62). Venwest argues that a contract for the sale of a yacht is a non-maritime matter and that the contract and warranty claims are governed by Florida law. (Doc. 63). Plaintiffs assert the tort claims are governed by general maritime law but are unclear as to whether Florida or Washington law governs the contract and warranty claims. Plaintiffs further contend that the claim pursuant to the Magnuson-Moss Warranty Act is not governed by maritime law as suggested by Defendants, but rather the court should look to the Act itself and may use state law to supplement the Act where the Act does not prescribe a regulating rule. (Doc. 100).

action on these counts. As for the claim for breach of implied warranty of merchantability (Count VII), Defendant Venwest urges that such warranty was specifically and sufficiently disclaimed in the Yacht Purchase Contract and by the Marlow Defendants' limited warranty. Further, Plaintiffs have failed to plead a cause of action for such breach because there are no allegations establishing that notice was given to the seller of the alleged breach and because Venwest is not a merchant. The Marlow Defendants argue both a failure to plead notice, as well as a lack of privity with the Plaintiffs, as grounds for dismissal.

As for Count XII which seeks to hold owners, Michael F. Cannova and David H. Marlow, personally responsible for the warranty claims, they urge the complete lack of factual predicate to render them personally liable. Moreover, as to the parent corporation, there is no separate count directed to Marlow-Cannova Group, Inc., and it cannot be held liable for the actions of its subsidiaries absent fraud or wrongdoing by the parent through its subsidiary. No such allegations are pled against the parent corporation here and thus any claims against this Defendant should be dismissed. (Doc. 96).

Finally, Defendants seek dismissal of the allegations for violation of the Magnuson-Moss Warranty Act (Count XIII). Venwest urges the claim is precluded under general maritime law. Defendants urge that because Plaintiffs fail to allege proper state law warranty claims, they cannot maintain this federal claim because federal courts look to relevant state law to determine the applicability of the underlying warranty claim.

In response, Plaintiffs urge that the allegations in this complaint are more than adequate to satisfy the requirements of Fed. R. Civ. P. 8 and applicable case law. More particularly, as for the tort claims, Plaintiffs urge such are not barred by the economic loss rule

5

where they have no alternative theory of recovery other than through a tort action. Because Plaintiffs just recently discovered that Marlow Explorer Yachts, Ltd. is a "sham" entity and because all the Marlow entities are so intertwined, Plaintiffs claim uncertainty as to which of the Defendants, if any, they have contractual remedies against and urge that dismissal at this stage would be premature and that they should be permitted to pursue alternative remedies. In connection with the Marlow Defendants, Plaintiffs also contend that the economic loss rule is inapplicable where there is no privity of contract. As for the contract claims, they urge that the allegations are also adequately pleaded to state claims under Florida law. As to the warranty claims, Plaintiffs argue that Venwest's attempted disclaimer of the implied warranty of merchantability is ineffective because of the express warranty. Further, Venwest's role as a merchant, seller or mere broker is not properly resolved on this motion. Given Plaintiffs' well-pleaded allegations, this claim should not be dismissed on this motion. As for the Marlow Defendants, Plaintiffs respond that notice is adequately pleaded and privity will be established. Given that the warranties were issued by a sham entity and given the intertwined relationship of the Marlow Defendants, Plaintiffs submit that it will be for the trier of fact to determine which of the various Marlow Defendants are liable for the breach of express and implied warranties. Finally, since Plaintiffs have adequately pled valid causes of action for breach of the implied warranty of merchantability and breach of express warranty, they urge that their Magnuson-Moss Warranty Act claim is properly brought. (Docs. 100-102).

     As for Cannova and Marlow, individually, Plaintiffs assert that they have adequately alleged facts to permit their claim for individual liability against these individuals who are the sole owners of the Marlow-Cannova Group and all the Marlow entities and who permitted the

use of a sham entity to be used to avoid debts and warranty claims. As for the Marlow-Cannova Group, Inc, Plaintiffs assert that they have properly included it in each of the claims against the Marlow Defendants. (Doc. 101).

## II.

A motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is a motion attacking the legal sufficiency of a complaint. In deciding such a motion, the court must accept the facts pleaded as true and construe them in a light most favorable to the plaintiff. *Leib v. Hillsborough County Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which she bases her claim. Instead, Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1268 (11th Cir. 2009). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* __ U.S. __, 129 S. Ct. at 1949. A complaint does not state a facially plausible claim for relief if it shows only "a sheer possibility that the defendant acted unlawfully." *Id.* A complaint does not need to contain detailed factual allegations to survive a Rule 12(b)(6) motion, however, "[a] pleading that offers labels and conclusions or a

7

formulaic recitation of the elements of a cause of action will not do."[7] *Id.* (quotation marks and citations omitted). In evaluating the sufficiency of a plaintiff's pleadings, the court must make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, __ U.S. __, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

### III.

Under the circumstances of this case, I find the tort claims are governed by general maritime law and that the contract and breach of warranty claims are governed by state law.[8]

---

[7] When reviewing a motion to dismiss, the court may consider documents attached to the complaint or directly referred to in the complaint, and in so doing will not convert the motion to one for summary judgment. *See* Fed. R. Civ. P. 10(c); *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985); *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1315 (M.D. Fla. 2000). A court also may consider documents attached to a motion to dismiss without converting the motion into one for summary judgment if the attached documents are central to the plaintiff's claim and undisputed in terms of authenticity. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

[8] Admiralty law recognizes a general theory of liability for negligence and products liability including strict liability. *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866 (1986). "As a general rule, where a party has alleged both diversity of citizenship and admiralty jurisdiction, 'if admiralty jurisdiction . . . exists, federal maritime law governs the substantive issues of the case.'" *Carrier v. Jordaan*, No. CV 208-068, 2010 WL 3743649, at *3 (S.D. Ga. 2010) (citing *Lady Di Fishing Team, LLC v. Brunswick Corp.*, No. 3:07-cv-402-J-33TEM, 2007 WL 3202715, at *3 (M.D. Fla. Oct. 29, 2007)). On the other hand, "a contract for the sale or construction of a ship is not within the federal courts' admiralty jurisdiction." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1166 (11th Cir. 2009) (citing *Richard Bertram & Co. v. The Yacht, Wanda,* 447 F.2d 966, 967 (5th Cir. 1971)). And, "warranty claims grounded in contracts for the construction or sale of a vessel are outside admiralty jurisdiction." *E. River,* 476 U.S. at 872 n.7. Since the breach of contract and warranty claims in this case arise from the construction and sale of the yacht, they are within the diversity jurisdiction of the court and are governed by state law. The court has

The Magnuson-Moss warranty claims are governed by the terms of the Act, and to the extent applicable, by state law. *See, e.g.,* 15 U.S.C. § 2301(3) (defining "consumer" to include any "person who is entitled by the terms of such warranty . . . or under applicable state law . . ."); 15 U.S.C. § 2301(7) (defining "implied warranty" as one "arising under state law").

By my consideration, the economic loss rule bars all Plaintiffs' negligence and strict liability claims. In *East River,* the Supreme Court held that "whether stated in negligence or strict liability, no products liability claim lies in admiralty when the only injury claimed is economic loss." *E. River*, 476 U.S. at 876. As explained by the Court, "[w]hen a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong." *Id.* at 871. And, although the damage to a product itself may have certain attributes of a products-liability claim, "the injury suffered-the failure of the product to function properly-is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain." *Id.* at 867-68. Here, Plaintiffs seek only economic damages stemming from the alleged negligence or strict liability of the Defendants in performing under the contract to construct and sell this vessel. Under the economic loss rule, such claims are necessarily limited to contract and breach of warranty claims.

---

applied Florida law on this motion. The court notes that even if Washington state law is applicable, it appears to make no difference to the outcome here reached as the law of both states appears similar. Similarly, insofar as the tort claims are resolved under the economic loss rule, the application of that rule to these allegations brings the same result whether applied under maritime law or the state law of Florida or Washington.

The same conclusion would apply if the court were applying state law. *See Fla. Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So.2d 899 (Fla. 1987) (agreeing with majority of courts applying the economic loss rule which precludes recovery in tort for purely economic losses where the parties negotiate and allocate economic risks through warranty provisions and price); *Alejandre v. Bull*, 153 P.3d 864, 867-68 (Wash. 2007) (noting the "purpose of the economic loss rule is to bar recovery for alleged breach of tort duties where a contractual relationship exists and the losses are economic losses" and explaining that "[w]here economic losses occur, recovery is confined to contract to ensure that the allocation of risk and the determination of potential future liability is based on what the parties bargained for in the contract . . .").

To the extent that Plaintiffs argue that application of the economic loss rule would leave them without a suitable remedy because Defendants disclaimed or limited certain warranties, this raises no bar to the application of the economic loss rule. *See E. River*, 476 U.S. at 875 (applying economic loss rule notwithstanding that "[a]ny warranty claims would be subject to [defendant's] limitation, both in time and scope, of its warranty liability"). And although *East River* arose in a commercial setting, "[m]ost courts that have considered the issue have held that *East River* applies in the consumer context." *Fed. Ins. Co. v. Lazzara Yachts of N. Amer., Inc.*, No. 8:09-cv-607-T-27MAP, 2010 WL 1223126, at *3 (M.D. Fla. Mar. 25, 2010) (quoting *Ace Am. Ins. Co. v. Grand Banks Yachts, Ltd.*, 587 F. Supp. 2d 697, 701 (D. Md. 2008) (collecting cases)). As for the Marlow Defendants, Plaintiffs urge that the rule is inapplicable absent privity. However, such is not the rule. *See Indem. Ins. Co. of N. Am. v. Am. Aviation*, 891 So. 2d 532, 541 (Fla. 2004) ("products liability economic loss rule

10

articulated in . . . *East River*, and adopted by [the Florida Supreme] Court in *Florida Power*, applies even in the absence of privity of contract); *Progressive N. Ins. Co. v. Therm Tech. Corp.*, No. 8:06-cv-1252-T-30MSS, 2008 WL 4557206, at *4-5 (M.D. Fla. Dec. 21, 2007) (tort claim against manufacturer for fire damage to motor home barred by Florida's Economic Loss Rule). In sum, the motions to dismiss are well-taken as to Counts I through IV.

As for the contract claims[9] and the breach of warranty[10] claims in Counts V - VIII, and XI, the motion to dismiss is presently denied. I find the claims adequately pleaded to withstand this motion. While Defendants raise significant issues related to the contract and in particular, the breach of warranty claims, I believe the issues are better addressed after full discovery and on subsequent motion.

For similar reasons, I find it appropriate, at present, to deny the motion as it relates to the Marlow-Cannova Group, Inc., on these counts. As for the allegations in Count XII seeking to pierce the corporate veil of the Marlow entities and the Marlow-Cannova Group,

---

[9]To state a cause of action for breach of contract under Florida law, a plaintiff must allege the existence of a valid contract, a material breach of the contract, and damages. *Abbott Labs., Inc. v. Gen. Elec. Capital,* 765 So.2d 737, 740 (Fla. Dist. Ct. App. 2000) (citing *Mettle, Inc. v. Ellen Tracy, Inc.,* 648 So.2d 253, 255 (Fla. Dist. Ct. App. 1994); *Abruzzo v. Haller,* 603 So.2d 1338 (Fla. Dist. Ct. App. 1992)); *see also Citoli v. City of Seattle*, 61 P.3d 1165, 1174 (Wash. Ct. App. 2003).

[10]To state a claim for a breach of warranty under Florida law, a plaintiff must establish the following: "(1) [f]acts in respect to the sale of the goods; (2) identification of the types of warranties created ... (3) [f]acts in respect to the creation of the particular warranty ... (4) [f]acts in respect to the breach of the warranty; (5) [n]otice to seller of breach; [and] (6) [t]he injuries sustained by the buyer as a result of the breach of warranty." *Breakstone v. Caterpillar, Inc.*, No. 09-23324-CIV, 2010 WL 2164440, at *3 (S.D. Fla. May 26, 2010) (citing *James v. Ashley Adams Antiques, Inc.*, No. 2:05-cv-515-FtM-29DNF, 2006 WL 4990908, at *5 (M.D. Fla. June 15, 2006) (quoting *Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So.2d 351, 353 (Fla. Dist. Ct. App. 1977)); *see also, e.g., Fed. Signal Corp. v. Safety Factors, Inc.*, 886 P.2d 172 (Wash. 1994).

Inc., and to impose personal liability against Mssrs. Cannova and Marlow, I find them adequately pleaded to withstand this motion.

As for the final count asserting a Magnuson-Moss Warranty claim, the Act provides "a separate statutory cause of action to consumers 'damaged by the failure of a supplier, warrantor, or service contractor to comply with [any obligation imposed by the Act] or under a written warranty, implied warranty of service contract.'" *Fed. Ins. Co*, 2010 WL 1223126, at *5 (quoting *Cunningham v. Fleetwood Homes of Ga., Inc.,* 253 F.3d 611, 617-18 (11th Cir. 2001) (quoting 15 U.S.C. § 2310(d)(1)). Citing *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342 (S.D. Fla. 2007), Defendants urge that the Magnuson-Moss Warranty Act claim is preempted by admiralty law. However, that case is factually distinguishable involving a maritime contract, the repair of a vessel, and the alleged breach of warranties related to such repairs, which were governed by admiralty law. *Id.* at 1352. As the court stated, "'[i]t is well settled that a contract to repair a vessel is maritime'" and a vessel owner has a maritime claim whether he sues in contract for breach of warranty or in tort. Further, "[g]eneral federal maritime law preempts a claim for damages under . . . the Magnuson-Moss Warranty Act." *Id.* at 1352 (citing *DeRossi v. Nat'l Loss Mgmt.,* 328 F. Supp. 2d 283, 288-89 (D. Conn.2004)). However, for the reasons set forth above, the contract and warranty claims asserted here are not the subject of maritime law. Accordingly, this federal statutory remedy is not preempted by admiralty law. Thus, given that the court declines on this motion to dismiss the state law breach of warranty claims pending full discovery and further development of the legal issues, it likewise declines to dismiss the federal counterpart at Count XIII.

IV.

Accordingly, for the reasons set forth above, Defendants', Marlow Yachts Limited, Inc., Marlow Marine Sales, Inc., Marlow Marine Service, Inc. f/k/a Marlow Marine Services, Inc., Motion to Dismiss Plaintiffs, Robert D. Hunter and Pat Hunter f/u/b/o St. Paul Fire & Marine Ins. Co., Third Amended Complaint (Doc. 95), Defendants', Marlow-Cannova Group, Inc., Michael F. Cannova, and David H. Marlow, Motion to Dismiss Plaintiffs', Robert D. Hunter and Pat Hunter, f/u/b/o St. Paul Fire & Marine Ins. Co., Third Amended Complaint (Doc. 96), and Defendant Venwest Yachts, Inc.'s Motion to Dismiss Plaintiffs' Third Amended Complaint (Doc. 97) are **granted in part** to the extent that the tort claims alleged in Counts I, II, III, and IV are barred by the economic loss rule and therefore dismissed. In all other respects, Defendants' motions (Docs. 95, 96, 97) are **denied**.

**Done and Ordered** in Tampa, Florida, this 18th day of March 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record