UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ROBERT D. HUNTER and
PAT HUNTER f/b/o ST. PAUL
FIRE & MARINE INS. CO.,**

      **Plaintiffs,**

v.                                              Case No.  8:09-cv-1772-T-TBM

**MARLOW YACHTS, LIMITED, INC.,
MARLOW MARINE SALES, INC., MARLOW
MARINE SERVICES, INC. f/k/a MARLOW
MARINE SERVICES, INC., MARLOW-CANNOVA
GROUP, INC., and MICHAEL E. CANNOVA and
DAVID H. MARLOW, individually,**

      **Defendants.**
                                          /

**O R D E R**

THIS MATTER is before the court on the following motions:

1. **Defendants' Marlow Yachts Limited, Inc., Marlow Marine Sales, Inc., Marlow Marine Service., Inc. f/k/a Marlow Marine Services, Inc., Marlow-Cannova Group, Inc., Michael E. Cannova, and David H. Marlow, Motion for Summary Judgment and Incorporated Memorandum of Law** (Doc. 115) and Plaintiffs' response in opposition (Doc. 144); and

2. **Plaintiffs' Motion for Summary Judgment and Incorporated Memorandum of Law** (Doc. 117),[1] and Defendants' Marlow Yachts Limited, Inc., Marlow Marine Sales, Inc., Marlow Marine Service., Inc. f/k/a Marlow Marine Services, Inc., Marlow-Cannova Group, Inc., Michael E. Cannova, and David H. Marlow, Response to Plaintiffs' Motion for Summary Judgment (Doc. 140).

---

[1] A portion of Plaintiffs' motion was directed against the Defendant, Venwest Yachts, Inc.  Plaintiffs have settled all claims with Venwest (Doc. 149) and thus that aspect of the Plaintiffs' motion for summary judgment directed to Venwest is now moot.

I.

Certain facts are undisputed. A fire occurred on August 30, 2007, aboard *Pacific Blue*, a 57' Marlow Explorer yacht, that the Plaintiffs, Robert and Pat Hunter (Plaintiffs or the Hunters), purchased from Venwest Yachts, Inc. (Venwest), pursuant to a written Yacht Purchase Contract (YPC) dated December 10, 2004. The Marlow Defendants are not a party to the YPC. Venwest purchased the yacht under an oral agreement with Marlow. The yacht was manufactured in China and delivered to Venwest for transfer to the Plaintiffs in Seattle, Washington in February 2007.[2]

At the time the YPC was finalized in December 2004, David Marlow was owner and operator of Composite Structures, Inc., d/b/a Marlow Marine Sales. Their boats were constructed in China. The corporate structure and ownership underwent reorganization in 2005 apparently in connection with Michael Cannova becoming a principal. A number of separate corporations were created and it appears that all but one of these corporations is sued in this litigation.[3] These corporations are identified generally herein as "Marlow" or the "Marlow Defendants." It is undisputed that David Marlow and Michael Cannova are the principals of the Marlow Defendants. Evidence reveals that the Marlow Defendants operated under certain trade names including "Marlow Yachts" and "Marlow Explorer Yachts, Ltd."

---

[2] The Plaintiffs' log notes reflect the first Sea Trial in Lake Washington on February 20, 2007. (Doc. 119-4 at 2).

[3] In addition to the Florida corporations created by Marlow and Cannova in 2005, another entity was incorporated under Bermuda law, Marlow Yachts, Ltd. According to the testimony by David Marlow, Marlow Yachts, Ltd. was part of the team that went on to manufacture *Pacific Blue*. Mr. Marlow denies that that entity issued a separate warranty. In any event, it is not a party in this suit.

Neither is a legal entity nor is either registered as a fictitious name consistent with Florida law.

At the time of the fire, the *Pacific Blue* was moored at the Columbia River Yacht Club in Portland, Oregon. The Hunters are residents of Oregon; Venwest is a Washington corporation; and the Marlow Defendants are Florida residents or corporations. A "Limited Warranty" was issued by Marlow Explorer Yachts, Ltd., and was an attachment to the YPC.[4] "Marlow Explorer Yachts, Ltd." is not a formal legal entity. The fire, which occurred approximately six months after Plaintiffs took delivery of the yacht, caused significant damage to the yacht for which Plaintiffs' insurer, St. Paul Fire & Marine Insurance Co. (St. Paul), paid to have the damage repaired. The repairs were done in China at the same shipyard that built the yacht.[5]

While the origin of the fire in the starboard lazarette is not in dispute, the cause of the fire is disputed. Plaintiffs and their expert, Paul Way, are of the opinion that an improperly installed Perko light fixture was the cause of the fire. Defendants' expert, Adam Farnham, takes issue with Mr. Way's opinions. In essence, Mr. Farnham opines that no definitive cause can be identified and that the light fixture as the cause is less probable than several other potential causes of the fire. (Doc. 123-4). Marlow, in their answers to interrogatories deny

---

[4]According to Venwest, this warranty document was created by Marlow and would have been provided to the Plaintiffs at the time the YPC was signed in 2004. Mr. Hunter testified he received the Limited Warranty in 2007 when the yacht was delivered.

[5]Evidence suggests that several estimates for the repair work were obtained. Ultimately, Plaintiffs chose Marlow to do the repairs and the repairs were completed at the shipyard in China. Marlow was paid by St. Paul for the repair work.

that the damage was a covered warranty claim. (Doc. 117-2 at 9). In deposition testimony, Joe Hackleberg testified that if it were determined that the cause and origin of the fire is as a result of the improper installation of a Perko lighting fixture, then that would be covered by the limited warranty. (Doc. 130-1 at 33). However, Hackleberg denies that this is a warranty claim as there has been no determination as to the cause. *Id.* at 22. David Marlow similarly testifies that "if [they] made a mistake to cause that fire," Marlow would have responsibility under the limited warranty, as written. (Doc. 119-1 at 92). In short, the claims are disputed and Marlow denies its obligation to reimburse St. Paul for the repairs to the *Pacific Blue*.

By the Third Amended Complaint, the Hunters seek reimbursement on behalf of their insurer, St. Paul, for the $842,128.12 paid by St. Paul to repair the yacht, together with attorneys' fees, costs, and interest. (Doc. 94). Currently pending are Plaintiffs' claims against Defendants, Marlow Yachts Limited, Inc., Marlow Marine Sales, Inc., Marlow Marine Service, Inc. f/k/a Marlow Marine Services, Inc., Marlow-Cannova Group, Inc., Michael F. Cannova, and David E. Marlow for breach of contract (Count VI), breach of implied warranty of merchantability (Count VIII), breach of express warranty (Count XI), individual liability (Count XII), and violations of the Magnuson-Moss Warranty Act (Count XIII).

Plaintiffs urge that Washington law governs the disputes herein as the YPC contained a choice of law provision, the YPC was signed in the State of Washington, and the yacht was delivered in Washington. Their motion seeks judgment in Plaintiffs' favor and against the Marlow Defendants jointly and severally. In sum, Plaintiffs contend that because the entity identified in the YPC as the builder and warrantor ("Marlow Explorer Yachts, Ltd.")

is a "sham" entity that does not legally exist, all of the Marlow entities and their principals should be held jointly and severally liable for the damages to the yacht. On the breach of contract claim, Plaintiffs submit they are third party beneficiaries of the agreement between Marlow and Venwest for the construction of the 57' Marlow Explorer Yacht which was to be built for the Hunters. Because Marlow delivered a yacht to Venwest with an improperly installed light fixture which caused a fire and serious damage, Marlow breached its contract with Venwest and as third party beneficiaries of that contract, Plaintiffs are entitled to recover their damages from the Marlow Defendants. On the breach of implied warranty of merchantability, Plaintiffs similarly argue broadly that Marlow, as the manufacturer of the yacht, was a merchant with respect to the yacht and impliedly warranted that it was in merchantable condition at the time of delivery to the Hunters, but it was not. Rather, a fire occurred within six months of delivery of the yacht to the Hunters which resulted in significant damage to the yacht. On the express warranty claim, Plaintiffs chiefly argue that because the same was issued by a sham entity, the warranty (and any limitation of damages therein) are unenforceable and Defendants should be held jointly and severally liable for breach of contract and the implied warranty of merchantability. Plaintiffs urge that neither "Marlow Yachts" nor "Marlow Explorer Yachts, Ltd." is a legal entity nor a duly registered fictitious name and as a consequence all the Marlow Defendants, including the principals, have perpetrated a fraud and should be held accountable for the fraud and deceit.[6] Finally,

---

[6] Alternatively, if the court finds the "Limited Warranty" to be enforceable, Plaintiffs argue that both David Marlow and Joe Hackleberg have now testified that the subject damage in its entirety would be covered under the terms of the warranty, it should therefore be enforced, in this case, as against all the Marlow Defendants, jointly and severally, because of

5

Plaintiffs urge that they are consumers and that the Marlow Defendants are suppliers and warrantors as defined by the Magnuson-Moss Warranty Act ("MMWA"), and that their claims are appropriately covered under the MMWA entitling them to damages, including attorney's fees.

In Defendants' motion for summary judgment and in their response to Plaintiffs' motion, Defendants urge that Florida law applies to the disputes before the court and that these Defendants are all entitled to summary judgment as a matter of law. Specifically, Defendants argue that Plaintiffs' warranty claims are barred due to Plaintiffs' failure to provide Defendants with appropriate notice that they were asserting a warranty claim and in failing to give Defendants the opportunity to cure. Notwithstanding the lack of notice, Defendants urge that Plaintiffs' claims fail for lack of privity, a prerequisite for such claims under Florida law. Defendants suggest that even applying Washington law, Plaintiffs' warranty claims fail due to Plaintiffs' inability to establish the existence of vertical privity, and as such, Plaintiffs cannot establish that they are third-party beneficiaries under the contract between Defendants and Venwest. Furthermore, Defendants submit that they properly disclaimed any implied warranties and incidental or consequential damages. Because Plaintiffs' state law warranty claims fail, the Magnuson-Moss claim necessarily fails as well.

The Defendants urge that the responsibility for any valid warranty claim falls to Marlow Yachts Limited, Inc., and otherwise, there is no basis for imposing liability against the other entities or Michael Cannova and David Marlow, individually. Regarding these

---

their improper use of the fictitious name "Marlow Explorer Yachts, Ltd."

6

individuals, they urge that Mr. Cannova was not involved with the Marlow entities until 2005, after the YPC was entered into, and as for David Marlow, Plaintiffs fail to set forth the requisite proof in order to hold him or Mr. Cannova personally liable in an officer/shareholder capacity. As to Marlow Marine Sales and Marlow Marine Service, and their holding company, Marlow-Cannova Group, Inc., Defendants submit that no proof has been offered as to these Defendants' involvement in the manufacture, sale or service of the subject yacht, and thus they are entitled to summary judgment on Plaintiffs' claims.

## II.

The court shall grant summary judgment for the moving party only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

When deciding a motion for summary judgment, "[i]t is not part of the court's function . . . to decide issues of material fact, but rather determine whether such issues exist to be tried . . ." and "[t]he court must avoid weighing conflicting evidence or making credibility determinations." *Hairston*, 9 F.3d at 919 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)). The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried. *Hairston*, 9 F.3d at 921; *see also Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997).

7

All the evidence and inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997).

### III.

### A.

Initially, the court must decide whether Florida or Washington law applies. As noted, Plaintiffs maintain that Washington law applies and Defendants urge Florida law applies. For the following reasons, I conclude that Washington law applies to the disputes herein.

A federal district court sitting in diversity must apply the choice of law rules of the forum state, in this case Florida. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "Under Florida law, a court makes a separate choice of law determination with respect to each particular issue under consideration." *Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996). As to Plaintiffs' breach of warranty and Magnum-Moss claims, § 6(1) of the Restatement (Second) of Conflict of Laws, provides that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." Restatement (Second) of Conflict of Laws § 6(1) (1971). Florida's UCC provides that "this code applies to transactions bearing an appropriate relation to this state." Fla. Stat. § 671.105(1). "Federal courts interpreting this phrase . . . have taken into account the residence of the parties, the location of negotiations, the place of purchase of the goods, and the physical location of the goods at issue." *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 641 (S.D. Fla. 2008) (quoting *Premix-Marbletite Mfg. Corp. v. SKW*

8

*Chems., Inc.*, 145 F. Supp. 2d 1348, 1353-54 (S.D. Fla. 2001)). With regard to Plaintiffs' breach of contract claim, Florida continues to adhere to the rule of lex loci contractus. *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So.2d 1160 (Fla. 2006). This means that "the contract is made at the place where the last act necessary to complete the contract is done." *Jemco, Inc. v. UPS, Inc.*, 400 So. 2d 499, 500 (Fla. Dist. Ct. App. 1981) (citations omitted).

As the parties argue this, there are two agreements at issue here. First, there is the YPC entered into between Plaintiffs and Venwest, a Washington corporation, by which Plaintiffs agreed to purchase from Venwest a 57' Marlow Explorer motor yacht. The YPC contains a choice of law provision designating that the YPC is to be construed in accordance with the laws of the State of Washington. Although a deposit for the yacht was given by Plaintiffs to Venwest at the Ft. Lauderdale (Florida) Boat Show in or about October 2004, the YPC was not finalized and signed until December 2004.[7] By this YPC, Venwest agreed to place an order for the construction of the yacht pursuant to its agreement with the builder, identified therein as Marlow Explorer Yachts, Ltd., and to "cause Builder to commence construction of the Vessel upon execution of this Agreement . . . . " (Doc. 117-1 at 1-2).

Undisputed evidence further demonstrates that Venwest had drafted this form of YPC for use in sales specifically involving Marlow yachts. It appears that during the four-year period of their arrangement, Venwest acted as a dealer of Marlow yachts for the west

---

[7]There is a dispute whether the Plaintiffs signed the YPC at their home in Portland, Oregon or at Venwest's offices in Seattle, Washington. None of the parties have taken the position that Oregon law applies to the disputes herein.

9

coast and sold approximately 15 Marlow boats. According to Randy Cowley of Venwest, in each sale, Venwest used the same form YPC without protest by any Marlow Defendant.

It is further undisputed that after construction, the *Pacific Blue* was transported to Seattle, Washington for sea trials by Venwest and thereafter, for transfer/sale to the Plaintiffs.

While there is little evidence proffered about the working relationship between Venwest and Marlow, the evidence of record suggests that shortly before the Ft. Lauderdale Boat Show in 2004, Randy Cowley, a principal in Venwest, met with David Marlow in Florida and an agreement was reached authorizing Venwest to act as an exclusive dealer of Marlow Explorer yachts for the west coast region.[8] It further appears that Mr. Marlow first met the Hunters in the Washington area and thereafter referred them to Venwest. In any event, the Hunters met with Venwest at the boat show, and made a partial down payment toward the purchase of a 57' Marlow yacht. After finalizing the YPC with the Hunters in early December 2004, Venwest placed the order for Marlow to build this yacht (and apparently paid to Marlow some portion of the down payment). According to representatives of Venwest and Marlow, the only contract documents as such are the invoices from Marlow to Venwest. There are certain other documents signed by David Marlow when the yacht was completed and transferred to Venwest.[9]

---

[8] According to David Marlow, Venwest was an independent dealer and the exclusive Marlow yacht dealer for the Seattle, Washington area. By Randy Cowley's testimony, Venwest was the exclusive Marlow yacht dealer for the west coast of the United States. The YPC identifies Venwest as the "exclusive West Coast Dealer for Marlow Explorer Yachts, Ltd."

[9] Most of the documentation bears the name "Marlow Explorer Yachts, Ltd.," but the final invoice is in the name of Marlow Yachts Limited, Inc.

While the Marlow Defendants were not a party to the YPC, they surely were aware of and appreciated the benefits of Venwest's activities on their behalf. The "Limited Warranty" provided by Marlow Explorer Yachts, Ltd., issued from Venwest to the Plaintiffs in Washington as well.[10] Here, it appears the agreement to build this yacht was completed upon Venwest's placing its order for the yacht together with payment of some sum of money to Marlow, such activities being accomplished from its offices in Washington. After construction was completed in China, the boat was transferred to Venwest in the Washington area. Beyond the fact that the Marlow Defendants are located in Florida and one or more of their representatives no doubt communicated with the company contracted to build the boat in China, there is little other nexus between Florida and the contract to build the yacht.

In these circumstances, the court concludes that Washington law clearly applies to the YPC and also should apply to the oral agreement between Venwest and Marlow for the manufacture and sale of this yacht to Venwest.

B.

Upon consideration, except as set forth below, the cross-motions for summary judgment are denied. Under Washington law, I find disputed questions of material facts surrounding each of the remaining claims made by Plaintiffs that go beyond the core dispute as to the cause and origin of this fire. By my consideration, too little is known of the contract between Venwest and Marlow to resolve the third-party beneficiary dispute. And, if Plaintiffs

---

[10]The parties dispute whether the Limited Warranty was delivered along with the YPC in 2004, as Cowley contends, or later, along with the delivery of the yacht in 2007, as Plaintiffs contend. In any event, both events– the finalization of the YPC in late 2004 and the delivery of the yacht to the Hunters– occurred in Washington.

11

can establish third-party beneficiary status, their claim for breach of the implied warranty of merchantability remains viable under Washington law assuming it was not properly disclaimed. *See Tex Enters., Inc. v. Brockway Standard, Inc.*, 66 P.3d 625, 628 (Wash. 2003) ("a vertical non-privity plaintiff is a buyer who is in the distributive chain, but who did not buy the product directly from the defendant."). The *Tex Enterprises* court recognized that Washington's highest court in *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 831 P.2d 724 (Wash. 1992), specifically acknowledged a third party beneficiary exception to the general rule that a vertical nonprivity plaintiff cannot recover from a remote manufacturer for breach of implied warranty. *Tex Enters.*, 66 P.3d at 628. And while Washington law may permit disclaimers and limitations on damages under certain circumstances, *see Berg v. Stromme*, 484 P.2d 380 (Wash. 1971); RCW 62A.2-316,[11] here, the facts are insufficiently developed to allow resolution of the disputes over the purported warranty disclaimer and limitations on damages. As set forth below, I reject Plaintiffs' argument that the "Limited Warranty" given by Marlow Explorer Yachts, Ltd., a fictitious entity, is a sham such that it is unenforceable. Instead, it appears a question of fact as to which of the Marlow entities is responsible under that warranty should liability be established. As for Defendants' claim that the lack of notice and opportunity to cure bars these claims, I disagree.

---

[11] In pertinent part, RCW 62A.2-316, provides that, "in any case where goods are purchased primarily for personal, family or household use and not for commercial or business use, disclaimers of the warranty of merchantability or fitness for particular purpose shall not be effective to limit the liability of merchant sellers except insofar as the disclaimer sets forth with particularity the qualities and characteristics which are not being warranted." RCW 62A.2-316(4).

On the defense of notice, Defendants seek entry of summary judgment on Plaintiffs' breach of warranty claims due to Plaintiffs' alleged failure to provide notice of the breach which failure Defendants urge is a complete bar to the warranty claims asserted. Defendants rely on the Fifth Circuit's opinion in *Eastern Airlines v. McDonnell Douglas Corp.*, 532 F.2d 957 (5th Cir. 1976), for the proposition that the notification by the buyer must set forth that the seller is considered to be legally in breach. However, a close reading of that case indicates that notice under the UCC "need not be a specific claim for damages or an assertion of legal rights." *Id.* at 976. And, as further noted by the court, "while the buyer must inform the seller that the transaction is 'still troublesome,' Comment 4 [of UCC § 2-607] also requires that the notification 'be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.'" *Id.* This is consistent with the purposes of the UCC's notice requirement which have been identified as follows: (1) to inform the seller of a possible dispute in connection with goods the seller has tendered; (2) to allow the seller to investigate the nature and extent of the defect that may constitute the breach; (3) to permit the seller to mitigate damages; (4) to permit the seller an opportunity to cure the defect; (5) to provide the seller an opportunity to negotiate a settlement of the breach; (6) to encourage good faith in commercial transactions; and (7) to protect the seller from stale claims. 63 AM. JUR. 2D *Products Liability* § 786 (2011).

The proffered evidence here reveals that Mr. Hunter called Randy Cowley of Venwest within a day or two after the fire asking Mr. Cowley if this was a warranty claim. (Doc. 119-3 at 63). Mr. Cowley confirmed that Mr. Hunter called him the morning after the fire occurred and he then drove to Portland that day to see the yacht. (Doc. 119-7 at 45-47).

David Marlow testified that Mr. Hunter sent him an email about the occurrence of the fire almost immediately. (Doc. 119-1 at 67). Although Mr. Marlow did not travel to Portland at that time, Joe Hackleberg went. *Id.* at 68-69. Mr. Hackleberg who claims to be an employee of Marlow Marine Sales, Inc. testified he went to see the yacht within a week of the fire. (Doc. 130-1 at 50). On September 12, 2007, a letter was sent by the Plaintiffs' insurer to Mr. Hackleberg and Randy Cowley, notifying them of a possible claim arising out of the damage to the Hunters' yacht and advising that evidence will be removed from the yacht. (Doc. 117-6). Another letter was sent by Travelers/St. Paul on September 18, 2007, to Hackleberg, Cowley, and others advising of a potential subrogation claim. (Doc. 119-7 at 118). On January 10, 2008, Plaintiffs sent a letter to Mr. Hackleberg regarding several discussions they had about the warranty aspects of the *Pacific Blue's* repairs and "reserving all warranty and legal rights under [their] purchase contract with Marlow." (Doc. 137-3).

By my consideration of the facts, adequate notice and an opportunity to cure appears to have been provided. Clearly, both Venwest and the Marlow Defendants were apprised almost immediately of the fire occurring and had representatives at the yacht within the week. Defendants were provided with the opportunity to investigate the nature of the incident and, as such, were permitted the opportunity to mitigate their damages. The correspondence directed to Marlow spelled out that the transaction is claimed to involve a breach and that Plaintiffs and their insurer would be pursuing legal remedies. Such correspondence certainly opened the door for settlement discussions. In light of the involvement of the Defendants throughout the investigation and repair process and given the totality of the communications between the Hunters or their insurer and these Defendants, I conclude that the requisite notice was

provided such that Defendants cannot raise the defense of lack of notice as a bar to Plaintiffs' warranty claims.[12]

There are likewise significant disputes under Washington law as to Plaintiffs' claim for consequential or incidental damages in light of the disclaimers set forth in the YPC and the express warranty. While the measure of a buyer's damages for breach of warranty may in proper cases include incidental and consequential damages, Washington law permits a limitation of such damages under certain circumstances. *See* RCW 62A.2-714; 62A.2-715, 62A.2-719.[13] Specifically, RCW 62A.2-719 provides that "[l]imitation of remedy to repair or replacement of defective parts or non-conforming goods is invalid in sales of goods primarily for personal, family or household use unless the manufacturer or seller maintains or provides within this state facilities adequate to provide reasonable and expeditious performance of repair or replacement obligations . . . [and that] limitation of other consequential damages is

---

[12]At a minimum, these circumstances raise a question of disputed fact under Washington law. Thus, while it is correct that, under Washington law, giving of notice is a prerequisite to recovery of damages on a breach of warranty claim, *see Ringstad v. I. Magnin & Co.*, 239 P.2d 848, 852 (Wash. 1952), "[w]hat is a reasonable time and whether the notice is in such form as to inform the seller that the buyer is claiming a breach of warranty may, under certain circumstances, be determined as matters of law, but usually, . . . they resolve themselves into questions to be determined by the trier of facts." *Id.* at 853.

[13]RCW 62A.2-714, provides in pertinent part, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. . . . [and] in a proper case any incidental and consequential damages under the next section may also be recovered." RCW 62A.2-714(2), (3). The next section, RCW 62A-715, defines "consequential damages" to include "injury to . . . property proximately resulting from any breach of warranty." RCW 62A.2-715(2)(b).

15

valid unless it is established that the limitation is unconscionable."[14] RCW 62A.2-719(3). *See also Fioroto Bros., Inc. v. Fruehauf Corp.*, 747 F.2d 1309, 1314-1315 (9th Cir. 1984) (issues as to whether the failure of a limited remedy would invalidate a separate disclaimer of consequential damages under Washington law would be determined on a case-by-case basis). The burden in these circumstances lies on the party seeking to include a warranty disclaimer in a non-commercial contract, i.e., the Marlow Defendants, to prove the legality of any such disclaimers. *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 47 P.3d 940, 945 (Wash. 2002). Such has not been adequately developed and cannot be resolved on these motions.

As for the claim brought pursuant to the Magnuson-Moss Act, as alleged in this case, such "is directly dependant upon a sustainable [state law] claim for breach of warranty.[15] Thus, if there exists no actionable warranty claim, there can be no violation of the Magnuson-Moss Act." *Ultimax v. Mercedes-Benz USA, LLC*, 2008 WL 974036, at *7 (S.D.

---

[14]"In determining conscionability the court must consider (1) the manner in which the contract was entered; (2) whether the parties had a reasonable opportunity to understand the terms of the contract; and (3) whether important terms were hidden in fine print. . . . No one factor is conclusive. The court looks to the totality of the circumstances when determining conscionability." *Cox v. Lewiston Grain Growers, Inc.*, 936 P.2d 1191, 1197 (Wash. App. 1997) (internal citations omitted).

[15]Specifically, Plaintiffs' Third Amended Complaint alleges that despite being provided sufficient notice and a reasonable opportunity to cure, the Defendants failed to comply with their warranty obligations, and that such failure constitutes a violation under the MMWA. Plaintiffs' motion for summary judgment advances a similar theory. At arguments, Plaintiffs raised the theory that because the warranty was issued in the name of a sham entity, it is deceptive and therefore violative of the MMWA. This theory has not been pled, and in any event, as discussed below, the Defendants' issuance of a written warranty in a trade name is not on its face deceptive absent some other evidence of fraud or deceit. And, to the extent that Plaintiffs raised for the first time at arguments an alleged violation of 15 U.S.C. § 2308, which restricts a supplier from disclaiming or modifying any implied warranty where such supplier makes a written warranty, I similarly conclude that such argument has not been raised by the pleadings, and thus is not appropriate for consideration at this juncture.

Ohio April 8, 2008) (internal citations omitted).  By way of example, if a lack of privity dooms Plaintiffs' state implied warranty claim, there can be no MMWA claim on implied warranty. *Id.* at *8.  Based on the conclusion that disputed questions of fact exist on Plaintiffs' state warranty claims, including whether or not Plaintiffs are able to establish vertical privity for purposes of establishing third party beneficiary status under Washington law and on the matter of the disclaimers, summary disposition of Plaintiffs' MMWA claim is not appropriate on the instant motions either.

I do find a lack of disputed question of material fact as to the Defendants, Marlow Marine Service., Inc. f/k/a Marlow Marine Services, Inc. ("Marlow Marine Service"), and Marlow-Cannova Group, Inc., such that these Defendants are entitled to summary judgment in their favor.  Plaintiffs urge that these entities are liable and should remain Defendants in this suit along with the other Marlow Defendants because of the wrongful designation of the warrantor in the Limited Warranty as "Marlow Explorer Yachts, Ltd.," a sham entity.  Yet Plaintiffs present no evidence linking these entities to this transaction in any way.  Nor do they offer legal support for their all encompassing "joint and several liability" theory based on the use of the alleged sham entity in this transaction.  Because Plaintiffs have offered no evidence that Marlow Marine Service, which operates a repair business at Snead Island, Florida, or Marlow-Cannova Group, Inc., which appears a mere holding company, had any involvement in this matter, Plaintiffs' claims against these entities are dismissed.  The same conclusion cannot be reached on this motion as against the remaining Marlow Defendants.[16]

---

[16]The Marlow Defendants themselves insist that Marlow Yachts Limited, Inc., is the entity responsible for any valid warranty claims made on this yacht.  Plaintiffs urge there is no

17

Regarding Plaintiffs' efforts to nullify the express limited warranty by reason of Marlow's repeated use in its business affairs of the "sham" entity Marlow Explorer Yachts, Ltd., I again find no legal or factual basis to support such result. Even in a light most favorable to Plaintiffs, their evidence shows only that the Marlow Defendants identified themselves using the fictitious, unregistered, trade name, Marlow Explorer Yachts, Ltd. Such is not altogether uncommon in the business world and in my view, in the absence of any demonstration of fraud or deceit in connection with the use of this trade name, there is no basis in law or fact for the court to declare the warranty a nullity or to strike any disclaimers set forth therein. *Cf., Bailey v. Monoco Coach Corp.*, 350 F. Supp. 2d 1036, 1040-41 (N.D. Ga. 2004), *aff'd* 168 Fed. Appx. 893 (11th Cir. 2006). Here, Plaintiffs make no showing of such fraud or deceit as might call into question the enforceability of this express warranty. A number of courts considering similar or analogous circumstances have concluded that the warranty or contract at issue was valid and enforceable and the issue for trial was to determine

---

objective support for this assertion. Under Washington law, warranties flow from the seller. Thus, express warranties by *sellers* are created in a number of ways and the implied warranty of merchantability is implied in a contract for sale where the *seller* is a merchant with respect to goods of that kind. *See* RCW 62A.2-313 and 62A.2-314. I find the available facts insufficient to permit a ruling as a matter of law that Marlow Yachts Limited, Inc., was the seller or otherwise granted the Limited Warranty in this instance. The proffered evidence suggests that despite assertions to the contrary, Marlow Marine Sales, Inc., another of the successor corporations to Composite Structures, Inc., played some role in the manufacture of this yacht and perhaps should be held liable on the express (or implied) warranty claims. *See* testimony of Joe Hackleberg. (Doc. 130-1). And, to the extent that the principals David Marlow and Michael Cannova chose to operate their businesses under a fictitious name, they arguably bear personal liability in the absence of some other responsible entity. Because it cannot be concluded on this record that these Defendants are wholly unaccountable under this contract to build or under the Plaintiffs' express warranty claim, summary judgment is improper.

the responsible entity or person under the warranty or contract.  *See, e.g., Worm World, Inc. v. Ironwood Prods., Inc.*, 917 So. 2d 274, 275 (Fla. Dist. Ct. App. 2005) ("the failure to comply with the [fictitious name] registration requirements does not impair the validity of any contract entered into by the party conducting business under an unregistered fictitious name."); *Seattle Ass'n of Credit Men v. Green*, 273 P.2d 513 (Wash. 1954) (affirming trial court's holding that a corporation can do business under an assumed name); *Harmon v. Ivy Walk, Inc.*, 853 N.Y.S.2d 289, 292 (N.Y. 2008) ("a corporation may be known by several names in the transaction of its business, and it may enforce contracts and be bound by contracts entered into in an adopted name other than the regular name in which it was incorporated"); *Pro Edge, L.P. v. Gue*, 374 F. Supp. 2d 711, 746 n.14 (N.D. Iowa 2005) ("The concept that a corporation can do business and/or enter into a contract under a fictitious or assumed name is recognized by a majority of other states.") (collecting cases).

## IV.

For the foregoing reasons, Defendants' Marlow Yachts Limited, Inc., Marlow Marine Sales, Inc., Marlow Marine Service., Inc. f/k/a Marlow Marine Services, Inc., Marlow-Cannova Group, Inc., Michael E. Cannova, and David H. Marlow, Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 115) is **granted in part** and **denied in part**, and Plaintiffs' Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 117) is **denied.**

The parties are directed to submit a Joint Pre-Trial Statement on the issues to be tried against the remaining Defendants by Wednesday August 31, 2011.  Unless need is demonstrated, no pretrial conference will be scheduled.

   <u>The non-jury trial in this cause presently scheduled to begin at 9:30 a.m. on Tuesday September 6, 2010, shall begin at 1:30 p.m. that same date.</u>  This court does not require trial briefs or other pretrial submissions in non-jury trials.  Motions in limine are discouraged.  The parties may be required to make post-trial submissions.

   **Done and Ordered** in Tampa, Florida, this 26th day of August 2011.

                       THOMAS B. McCOUN III
                       UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record